IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 10-30778 |
| | § | |
| ORGANIC FUELS LTD, | § | |
| | § | (Chapter 11) |
| Debtor. | § | |

**MOTION OF VOPAK TERMINAL GALENA PARK, INC. TO COMPEL DEBTOR TO IMMEDIATELY PERFORM LEASE AND EXECUTORY CONTRACT OBLIGATIONS OR TO CONVERT THE CASE TO CHAPTER 7**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

Vopak Terminal Galena Park, Inc. ("Vopak"), files this Motion of Vopak Terminal Galena Park, Inc. to Compel Debtor to Immediately Perform Lease and Executory Contract Obligations or Convert the Case to Chapter 7 (the "Motion"), and in support thereof, respectfully states as follows:

## I.  JURISDICTION

1. The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b).

## II.  BACKGROUND

2. On January 29, 2010 (the "Petition Date"), Vopak Terminal Deer Park, Inc., Vopak, Tankco Services of Texas Corp., Bay Area Industrial Contractors, Ltd., and Neal Construction Company, Inc. (collectively, the "Petitioning Creditors") filed the Involuntary Petition against Organic Fuels, Ltd. ("OFL" or the "Debtor") in the United States District Court for the Southern District of Texas, Houston Division [Docket No. 1]. The involuntary case was filed only after (i) OFL shut down operations in January 2009, (ii) demonstrated an inability to pay ongoing obligations due to Vopak and others, and (iii) left a number of unpaid vendors. OFL consented to an Order for Relief on the eve of trial thereon, and concurrently converted the chapter 7 case to a chapter 11 case on March 9, 2010 [Docket No. 18]. As such, OFL is currently acting as a debtor-in-possession.

3. OFL has no business operations or revenues. It appears to have only a caretaker-manager at this time. While it has apparently attempted since mid 2009 to try to locate a buyer for its nonoperating assets, it has not been successful to date.

4. Vopak has several executory contracts with OFL. These comprise agreements associated with operation of a biofuels plant and related storage, and among them include a Lease, Construction and Operating and Maintenance Agreement (the "Lease Agreement") under which Vopak agreed to lease space at its Galena Park facilities to OFL for the construction and operation of its biodiesel plant. Concurrently with the execution of the Lease Agreement, OFL and Vopak also entered into an Amended and Restated Terminal Agreement (the "Terminal

Agreement") and other agreements under which Vopak agreed to lease a series of storage tanks and other related facilities to OFL for storage and handling of its biodiesel product. OFL has yet to assume or reject any of these agreements. There are substantial defaults, as described below.

5. Significant accruing payment obligations are owing under the Agreements. OFL owed Vopak nearly $1.2 million in rent under the agreements as of December 31, 2009, and its own accounts payable list shows that this amount continues to accrue at approximately $220,000 per month further increasing the debt due.

6. OFL has accruing post-petition liabilities and obligations under the agreements, none of which OFL has any ability to pay or to perform. There are also non-monetary defaults. These include continuing production on the facility, which it has been unable to maintain since early 2009.

7. The passage of time continues to increase the amount of post-petition obligations owed, and the interests of other creditors will be adversely affected by continuing delay. For example, since the filing of the Involuntary Petition alone, OFL has incurred approximately $285,000 in involuntary "gap" charges to Vopak, and these charges now continue on an administrative priority basis to build at the rate of approximately $7333.00 per day following entry of the Order for Relief.[1]

8. Under the circumstances, and where the growing administrative claim may well not ever be paid given the Debtor's apparent lack of revenues, operations, employees or prospects, Vopak requests assurance it will have payments made to it, or that OFL recognize the futility of any chapter 11 process and convert to chapter 7.

---

[1] Calculated using as a working assumption monthly estimate recurring charges of $220,000 a month and a 30 day month.

### III. RELIEF REQUESTED

9. Vopak requests that this Court (i) require that OFL, in this interim period, immediately comply with its obligations pursuant to 11 U.S.C. § 365(d)(3) due and owing to Vopak and otherwise provide Vopak with adequate assurance of the Debtor's ability to perform; or, failing this, (ii) immediately convert the Debtor's chapter 11 case to a chapter 7 case.

### IV. ARGUMENTS AND AUTHORITIES

#### A. Compliance with Section 365(d)(3)

10. Pursuant to 11 U.S.C. § 365(d)(3), the Debtor is required to perform all of the obligations under the Lease and Terminal Agreements in particular. 11 U.S.C. § 365(d)(3) provides as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). Vopak is, in the Lease Agreement, having restrictions imposed upon the use of its property given the OFL equipment sitting upon its property, and the OFL tenancy of Vopak's tank storage facilities. It is proper in this context to have OFL duly and promptly perform on these payment obligations in particular. The legislative purpose behind section 365(d)(3) is the protection of the lessor's interests because, as Congress stated, "the landlord is forced to provide current services-- the use of its property, utilities, security, and other services-- without current payment. No other creditor is put in this position." 130 CONG. REC. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 576.

11. The case law makes plain that the Debtor here must perform all obligations associated with the agreements which are post-petition, pre-rejection obligations. *In re*

*Warehouse Club, Inc.*, 184 B.R. 316, 317 (Bankr. N.D. Ill. 1995); *In re Valley Media, Inc.*, 290 B.R. 73, 74 (Bankr. D. Del. 2003) ("The purpose of § 365(d)(3) is to protect landlords by requiring debtors to timely perform their obligations under the lease").

12. The obligations under the various agreements are due now to Vopak, and comprise daily operating costs in this bankruptcy case that have an administrative claim priority. On March 9, the chapter 11 case commenced with the voluntary conversion of the Order for Relief, after consenting to the Involuntary Chapter 7 Petition. In chapter 11, a debtor-in-possession in particular should pay for current obligations. Courts in more recent decisions have recognized the need for immediate payment of accruing post-bankruptcy obligations, and in the context of lease obligations in particular have required payment of "stub rent" on a pro rata basis for the period between the date of entry of the Order for Relief and the last day of the month for which rent is due. *See, e.g.*, *In re Stone Barn Manhattan LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008). While there admittedly is debate on the issue of whether the amount of rent owed should be calculated on a pro rata basis or on a "billing date" basis, Vopak urges the Court on the unique facts in this case to require OFL to pay its pro rata share of March rent for the period between the date of entry of the Order for Relief and the last day of the month or to demonstrate how it can ever pay any prospective obligations. Regardless, it appears on the record here that OFL lacks ability to pay the accruing obligations, even if commencing in April.

13. In short, there appears no sound reason for OFL to maintain a chapter 11 status as debtor in possession when it cannot pay administrative obligations that accrue. The court in *In re Stone Barn Manhattan LLC* listed some of the reasons other courts have favored the pro rata approach, including:

> (i) proration is simple to apply; (ii) the method produces equitable results as it allows both landlords and tenants to get what they bargained for—

>   current service for current payment—at the rate agreed to in the lease; (iii) proration is consistent with the long-standing, pre-amendment practice of prorating lease obligations pending rejection; (iv) neither the statute nor its legislative history indicates proration is precluded; and (v) proration is consistent with other provisions of the Bankruptcy Code, such as §§ 365(g) and 502(g).

398 B.R. at 364 (citations omitted).

14. OFL has not paid the rent it owes to Vopak since mid 2009, and Vopak was required to apply the deposit to satisfy the accruing obligations until this deposit was exhausted by September 2009. OFL continues to incur post-petition debt for the obligations it owes to Vopak under the Lease Agreement and the Terminal Agreement. Presumably, as a precondition for chapter 11 conversion, OFL has access to capital or resources through its ultimate owners, which comprise sophisticated and substantial investment funds. Under section 365(d)(3), OFL must timely pay its rent obligations to Vopak, and Vopak requests that this Court require OFL to timely pay the pro rata share of rent that has arisen post-petition, and to make the further payments that will soon come due anew on April 1, 2010 and thereafter.

**B. Conversion to Chapter 7 is Proper**

15. If OFL cannot immediately comply with its obligations under the Lease Agreement and the Terminal Agreement by providing for payment of the accruing post-petition obligations, then OFL will continue to incur administrative expenses for the rent it owes to Vopak, to the disadvantage of other creditors, and Vopak as well. This accrual of administrative expenses also strongly suggests that rehabilitation of OFL is highly unlikely. Therefore, if OFL cannot pay the post-petition rent that it owes to Vopak, Vopak requests that the Court convert OFL's chapter 11 case to a chapter 7 case if OFL does not do so.

16. Pursuant to 11 U.S.C. § 1112(b), the standard for determining whether a bankruptcy case should be converted to chapter 7 is whether conversion is "in the best interest of

creditors and the estate." The Bankruptcy Code provides that a chapter 11 case may be converted to chapter 7 for cause. Specifically, section 1112(b) of the Bankruptcy Code provides, in relevant part, that:

> **(b)** Except as provided in paragraph 2 of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes cause.
>
> . . .
>
> **(4)** For purposes of this subsection, the term 'cause' includes—
>
>> **(A)** substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation . . . .

11 U.S.C. § 1112(b).

17. To establish cause, both elements of section 1112(b)(4)(A) must be shown, *i.e.*, a substantial or continuing loss or diminution to the estate and the absence of a reasonable likelihood of rehabilitation. *In re Tolco Props., Inc.*, 6 B.R. 482, 488 (Bankr. E.D. Va. 1980). Once these elements have been satisfied, OFL must show why conversion to chapter 7 is not warranted. *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). Unfortunately, at this juncture and despite what are presumed to be bona fide intentions, OFL lacks any capacity to pay its accruing post-bankruptcy obligations, or to secure payment for the sizeable prepetition debts. In the absence of OFL's voluntarily converting this case, Vopak requests that the Court do so. *In re Schriock Constr.*, 167 B.R. 569, 574 (Bankr. D.N.D. 1994).

**Loss and Diminution of the Estate**

18.  Conversion of this case to chapter 7 is appropriate under 11 U.S.C. § 1112(b)(4)(A).  Administrative expenses are being incurred and will continue to accumulate if the case continues in chapter 11 with no hope that a viable Plan of Reorganization for OFL can be funded.  Courts have found that the accrual of administrative expenses alone satisfies the requirement of a continuing loss or diminution under section 1112(b)(4)(A).  "In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors.  This alone is enough to satisfy the first element of § 1112(b)[(4)(A)]."  *Loop Corp. v. United States Tr.*, 379 F.3d 511, 516 (8th Cir. 2004); *see also Schriock*, 167 B.R. at 575.  Because administrative expenses will continue to accrue if the case remains in chapter 11, the first element of section 1112(b)(4)(A) is satisfied.

19.  In return for the safeguards and relief provided by the Code,  § 521 and  Rule 4002 impose certain responsibilities on a debtor.  11 U.S.C. § 521; Fed. R. Bankr. P. 4002.  *See e.g., Beach v. Morris (In re Beach)*, 281 B.R. 917, 921 (B.A.P. 10th Cir. 2002) ("In addition to imposing affirmative duties on the Debtors, these provisions impress the policy that a debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the full benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law."); *In re Porter*, 276 B.R. 32, 39 (Bankr. D. Mass. 2002) ("Debtors who desire the full benefits of bankruptcy relief must fully comply with their duties under the Bankruptcy Code.").  In this regard, the Local Rules for this Bankruptcy Court plainly require that a debtor timely satisfy accruing post-bankruptcy obligations:

**Local Rule 4002-1.  Duties of Debtor-in-possession.**

 (a) A debtor in possession is responsible for strict compliance with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and standing orders.  Counsel for the debtor-in-possession is responsible for instructing the debtor about the U.S. trustee guidelines for a debtor-in-possession and insuring compliance with those guidelines.

 (b) The debtor, its officers, and agents hold and manage the debtor's assets as fiduciaries for the estate; they must strictly comply with court orders and Bankruptcy Code §§ 363 and 1107.  The debtor must prevent the depletion of the assets of the business during the proceedings, and it must notify its counsel immediately of a depletion or potential depletion.

 (c) If the debtor becomes aware of facts indicating that the continued operation of its business may not be in the best interest of the creditors or of the estate, it must immediately notify its counsel, who may immediately notify the court and recommend a solution.

. . .

 (f) The debtor must not incur administrative and priority expenses unless funds are reasonably expected to be generated to pay them.

 (g) The debtor must comply fully with Title 11's tax provisions, with the deposit requirements of the Internal Revenue Code and Regulations, and with all state tax laws.

 (h) The debtor must pay on a current basis all obligations incurred by it in operating its business.

At this time it appears likely that the Debtor is not in compliance with these mandates imposed by the Court, and as a result, conversion immediately would seem proper.

**No Likelihood of Rehabilitation**

20. OFL also lacks a "reasonable likelihood of rehabilitation," satisfying the second element of section 1112(b)(4)(A).

21. The standard of "rehabilitation" set forth by section 1112(b)(4)(A) and the "reorganization" contemplated by chapter 11 are not equivalent. Congress, in its use of the two terms, clearly intended some distinction, and courts have recognized one. "Rehabilitate" has been defined to mean "to put back in good condition; re-establish on a firm, sound basis." *In re Wright Airlines, Inc.*, 51 B.R. 96, 99 (Bankr. N.D. Ohio 1985); *accord In re Great Am. Pyramid Joint Venture*, 144 B.R. 780 (Bankr. W.D. Tenn. 1992); *In re L.S. Good & Co.*, 8 B.R. 315 (Bankr. N.D. W. Va. 1980). OFL is and has been defunct and without operations for over a year. A series of possible buyers have arisen since mid 2009, only to fail to make any commitment that will provide proper payment of the incurred and accruing amounts due Vopak, or to satisfy other unsecured creditors. While a plan of liquidation is permissible in a chapter 11 reorganization, rehabilitation requires more. Rehabilitation requires the reestablishment of a viable business. *See Loop*, 379 F.3d at 516; *In re The Ledges Apartments*, 58 B.R. 84, 87 (D. Vt. 1986); *Tolco*, 6 B.R. at 488. The debtor's business prospects must justify continued efforts at reorganization. Here they do not. Indeed, it appears likely in the absence of some immediate proof to the contrary that OFL will be hard pressed to satisfy the accruing ad valorem taxes due for 2009 and 2010.

22. Courts must consider whether a debtor's continuing losses can be stemmed and its operating problems corrected. However, OFL has not operated its biodiesel production facility for over a year, and it has previously made plain its inability to restart its operations. Simply put, OFL does not possess adequate financial means to reorganize its affairs; moreover, OFL's owners have exhausted their apparent willingness to fund accruing obligations. Thus, OFL lacks a reasonable likelihood of rehabilitation.

**Best Interests of Creditors and the Estate**

23.  In sum, absent immediate payment of accruing post-petition obligations to at least maintain the status quo for other creditors, conversion of these cases to cases under chapter 7 would be in the best interests of both creditors and the estate.  It is in the creditors' best interest that these cases be converted to chapter 7, where proceeds of liquidated assets can be distributed in the order of priority without the complications and expenses that arise in a chapter 11 plan of liquidation.

24.  In considering motions to convert and the best interests of the creditors, courts focus on the relative costs of administrative expenses in chapter 7 and chapter 11.  *See, e.g., In re Terry Mfg. Co.*, 2004 Bankr. LEXIS 1170, at *3 (Bankr. M.D. Ala. May 13, 2004) (explaining that administrative expenses associated with the confirmation process are avoided in chapter 7, including the expenses of drafting and noticing a plan and disclosure statement, soliciting and reviewing ballots, attending hearings and compiling evidence to win approval of the disclosure statement and confirmation, and maintaining a committee of unsecured creditors, and holding that to continue in chapter 11 would unreasonably diminish the estate).  The same rationale applies here.  OFL's case could be conducted with less expense under chapter 7.

WHEREFORE, Vopak respectfully requests that the Court order the Debtor to pay its § 365(d)(3) obligations, or if OFL cannot pay its post-petition obligations, convert the Debtor's chapter 11 case to a chapter 7 case, and grant such other and further relief to which Vopak is justly entitled.

Dated: March 17, 2010				Respectfully submitted,

**HAYNES AND BOONE, LLP**
By: /s/ Patrick L. Hughes
Patrick L. Hughes
Texas Bar No. 10227300
Francisco Rivero
Texas Bar No. 24046725
Kelli M. Stephenson
Texas Bar No. 24070678
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone (713) 547-2000
Facsimile (713) 547-2600
COUNSEL FOR VOPAK TERMINAL GALENA PARK, INC.